Filed 1/25/23  P. v. Johnson CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B319217 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA485567) |
| v. | |
| RASHAUN QUINTEL JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Henry J. Hall, Judge.  Affirmed.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

After entering a plea agreement, defendant Rashaun Quintel Johnson pleaded guilty and received an agreed upon sentence that included an upper term of imprisonment on one count.  Pursuant to the plea agreement, the court sentenced him to four years and eight months imprisonment, but suspended imposition of sentence and placed him on probation.  Less than a week after his sentencing, defendant robbed and assaulted a taxi driver.  Defendant's probation was promptly revoked, and the suspended prison sentence executed.

Defendant now appeals, arguing that two recent amendments to Penal Code section 1170 require remand for resentencing.[1]  We disagree that these amendments apply to plea agreements with stipulated sentences such as the one defendant entered, and affirm.

## BACKGROUND

Defendant was charged by an information filed by the Los Angeles County District Attorney's Office with criminal threats (§ 422, subd. (a); count 1) and corporal injury on a spouse (§ 273.5, subd. (a); count 2).  It was further alleged that defendant had suffered a serious or violent conviction within the meaning of sections 667, subdivisions (a)(1), (b) through (j), and 1170.12, subdivision (b).  Defendant pleaded not guilty and denied the special allegations.

On July 8, 2021, defendant pleaded no contest to both counts in the information.  Pursuant to the parties' plea agreement, the court sentenced defendant to the upper term of four years on count 2 and a consecutive sentence of eight months,

---

[1] Undesignated statutory references are to the Penal Code.

i.e., one-third the midterm sentence of two years, on count 1. Imposition of sentence was suspended and defendant was placed on three years formal probation subject to certain conditions, including that defendant obey all laws. During the plea colloquy, defendant stated that he understood if he violated probation he would be sentenced to four years and eight months in state prison. Defendant was given 642 days of presentence custody credit (321 days actual and 321 days conduct).

On July 13, 2021, defendant got into a taxi parked at a hotel. Defendant told the driver, Mahabub Sadek, "Go." Sadek could not yet drive away because there were pedestrians in the way, and told defendant this fact. Defendant replied by using the "F" word, saying "This is my country," and leaning over into the front seat of the taxi. Sadek called his dispatcher and said he did not feel safe. The dispatcher told defendant to get out of the taxi. When defendant refused, Sadek drove to a nearby police station; while Sadek did so, defendant took Sadek's taxi permit from inside the car. When Sadek parked in front of the police station, defendant got out of the taxi and started to walk away with the permit. Sadek stood in front of defendant and said, "Hey, can I have my permit?" Defendant told Sadek to go back to the taxi, then with his left shoulder hit Sadek in the head.

Defendant was thereafter arrested, charged with robbery, and held without bail. On July 15, 2021, the district attorney filed a motion requesting revocation of defendant's probation in the just concluded domestic violence matter. Also on July 15, 2021, after a court appearance on the probation revocation, defendant ignored commands from a Los Angeles County Sheriff's Deputy in the courthouse lockup and attempted to run out the bus bay door before he was transported back to jail. The

lockup deputy pursued defendant, and defendant was eventually apprehended near the street exit gate.

On February 1, 2022, the court held a probation revocation hearing after which defendant's probation was revoked and his prison sentence reinstated. On the prosecutor's motion, defendant's separately filed case for the July 13, 2021 robbery was dismissed pursuant to section 1385.

Defendant thereafter filed a timely notice of appeal.

## DISCUSSION

Defendant argues that two recent amendments to section 1170—Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) and Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Assembly Bill 124)—apply retroactively to his case, and this matter should be remanded for resentencing proceedings. The Attorney General agrees Senate Bill 567 and Assembly Bill 124 have retroactive application to nonfinal judgments, but argues defendant's sentence should be affirmed because these recent enactments do not apply to agreed upon sentences imposed pursuant to plea agreements.

## A. Standard of Review

We review a trial court's sentencing decisions for abuse of discretion, evaluating whether the court exercised its discretion "in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' " (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) "A failure to exercise discretion also may constitute an abuse of discretion." (*Id.* at pp. 847-848.)

4

To the extent resolution of defendant's claims requires statutory interpretation, our review of such questions is de novo. (*In re R.T.* (2017) 3 Cal.5th 622, 627.)  We begin by examining the ordinary meaning of the statutory language.  (*Ibid*.)  If the statutory language is unambiguous, that ordinary meaning controls.  (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 654.)  We also consider the statutory scheme's overall structure to determine what interpretation best advances the Legislature's underlying purpose.  (*In re R.T.*, *supra*, at p. 627.)  If there is any ambiguity in the statutory language, we may consider the statute's legislative history. (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 830.)

## B.    Amendments to Section 1170

At the time defendant was sentenced, section 1170, subdivision (b) provided that when a penal statute specified three possible imprisonment terms (lower, middle, and upper), the trial court generally had broad discretion to select the term from that triad that best served the interests of justice.  (Former § 1170, subd. (b).)  The trial court was further required to specify the reasons for its sentencing decision.  (*Ibid*.)

After defendant was sentenced and had his probation revoked, the Legislature made certain changes to section 1170 of relevance to this appeal.  Senate Bill 567 amended section 1170 to state that "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term" unless certain circumstances apply.  (See Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(1) & (2).)  Under Senate Bill 567, "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in

5

aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)

Assembly Bill 124 amended section 1170 to add that "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term" if certain factors were "a contributing factor in the commission of the offense." (Stats. 2021, ch. 695, § 5.1, adding § 1170, subd. (b)(6).) As relevant here, those factors include the defendant having "experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170, subd. (b)(6)(A).)

The parties agree and we concur that the changes to section 1170 made by Senate Bill 567 and Assembly Bill 124 apply retroactively to nonfinal judgments because they operate to reduce punishment, and there is no evidence to rebut the presumption of retroactivity. (E.g., *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)

## C. Senate Bill 567 Does Not Apply to Defendant's Plea Agreement

Defendant claims Senate Bill 567 requires that aggravating circumstances justifying imposition of an upper term sentence be established either by a stipulation from the defendant or by a finding at trial beyond a reasonable doubt in every case, whether that matter is resolved by plea agreement or contested trial.

6

Because that did not happen here, defendant argues, remand for resentencing is required. Defendant acknowledges the probation department identified multiple aggravating factors justifying an upper term sentence including numerous prior convictions, the underlying offense involving "great violence," and his unsatisfactory performance on probation. Defendant points out that he did not stipulate to any of these factors, nor were they found true beyond a reasonable doubt at trial. Nor did the trial court specify any aggravating factors as justifying the upper term sentence; it instead stated it was sentencing defendant "per the plea agreement."

As there is no indication defendant intends to stipulate to any aggravating factors (given that such a concession would render resentencing an empty exercise), defendant seeks a remand for trial at which the People will need to prove the aggravating circumstance(s) beyond a reasonable doubt. If they do so, defendant agrees the court can reimpose the same sentence agreed to in the plea deal. If they do not, and the court cannot impose the agreed upon sentence, defendant asserts both defendant and the People should then have an opportunity to withdraw from the plea agreement.

Defendant's argument was recently rejected in *People v. Mitchell* (2022) 83 Cal.App.5th 1051 (*Mitchell*), review granted December 14, 2022, S277314, which found Senate Bill 567 does not apply to stipulated sentences imposed pursuant to a plea agreement. The plain language of Senate Bill 567 indicates that it applies when the court chooses between the three possible terms of imprisonment "in its sound discretion." (§ 1170, subd. (b)(1).) *Mitchell* found this statutory language inapplicable to plea agreements with stipulated sentences because, when

7

sentencing pursuant to such agreements, a trial court does not exercise any discretion under section 1170 in deciding whether imposition of the upper, middle, or lower term would best serve the interests of justice. (*Mitchell*, *supra*, at p. 1058.) Once a plea is agreed upon and approved, the court "may not proceed as to the plea other than as specified in the plea." (§ 1192.5, subd. (b).) Thus, "when presented with a stipulated plea agreement, a trial court may either accept or reject it. 'Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly' " (*Mitchell*, *supra*, at p. 1058, quoting *People v. Cunningham* (1996) 49 Cal.App.4th 1044, 1047), such as by varying the agreed upon term of imprisonment.

The *Mitchell* court further concluded that even if there was some ambiguity in the statutory language, the legislative history supported the conclusion that Senate Bill 567 was not meant to apply to plea agreements with stipulated sentences. Senate Bill 567 is one in a series of changes to section 1170 following *Cunningham v. California* (2007) 549 U.S. 270 [127 S.Ct. 856, 166 L.Ed.2d 856] (*Cunningham*). In *Cunningham*, the United States Supreme Court held a prior version of section 1170 unconstitutional because "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (*Cunningham*, *supra*, at p. 281.)

The legislative history shows Senate Bill 567's author "discussed the history of section 1170, subdivision (b), beginning with its pre-2007 version that allowed trial courts the discretion to find aggravating circumstances to impose the upper term, the decision in [*Cunningham*] which held that this provision violated

8

the Sixth Amendment, and the passage of Senate Bill No. 40 (2007-2008 Reg. Sess.) . . . , which created former section 1170, subdivision (b).  (Assem. Com. on Public Safety, Analysis of Sen. Bill. No. 567 (2021-2022 Reg. Sess.) as amended May 20, 2021, p. 3.)  The author then noted that Senate Bill 567 would ensure ' "that aggravating facts are presented to the jury before a judge imposes a maximum sentence as decided in [*Cunningham*]" ' and that ' "individuals facing time have the ample ability to dispute information in the record that might not be true." '  (Assem. Com. on Public Safety, Analysis of Sen. Bill. No. 567 (2021-2022 Reg. Sess.) as amended May 20, 2021, p. 3.)"  (*Mitchell*, *supra*, 83 Cal.App.5th at p. 1059.)

As *Mitchell* observed, when there is a plea agreement with a stipulated sentence, there is no occasion for the court to have a hearing or trial at which aggravating facts are disputed.  (*Mitchell*, *supra*, 83 Cal.App.5th at p. 1059.)  "Further, in entering into the plea, [defendant] knowingly waived [his] rights to both a jury trial and court trial.  Therefore, the concern raised in [*Cunningham*] that a defendant's Sixth Amendment rights are violated when aggravating facts to support an upper term sentence are not found by a *jury* beyond a reasonable doubt does not exist here."  (*Ibid*.)

We find the reasoning of *Mitchell* persuasive.  "[W]hen a trial court sentences a defendant who has agreed to a stipulated sentence for a term of years, the trial court exercises no discretion to decide between an upper, middle and lower term and may not consider factors in mitigation and aggravation."  (*People v. King* (2020) 52 Cal.App.5th 783, 791.)  Given the court's decision to accept the plea agreement (and therefore be bound by its terms), the court here did not have triad sentencing

9

discretion to exercise. Indeed, in addition to being barred by section 1192, subdivision (b), any such exercise of discretion would necessarily disrupt the certainty a stipulated sentence plea agreement provides both to the defendant and the People.

Defendant's argument further would require us to conclude that Senate Bill 567 was sub rosa intended to fundamentally restructure the plea process—particularly in no contest pleas such as the one before us. When parties enter a no contest plea agreement, the defendant does not stipulate or admit to a factual basis for the offense or related sentencing factors; instead, the defendant makes a plea "nolo contendre" (literally "I will not contest it") where any statements the defendant makes in response to the court's questions about the voluntariness of the plea and its factual basis "may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based." (§ 1016, subd. (3); see also 4 Witkin & Epstein, California Criminal Law (4th ed. 2012) Pretrial Proceedings, § 292.)

Using this case as an example, when presented with a no contest plea agreement including an upper end stipulated sentence (which by virtue of being a nolo contendere plea would not include any factual stipulations by the defendant), under defendant's reading of Senate Bill 567 the trial court would have no alternative other than to have a trial at which either a jury or the court (if the plea agreement jury trial waiver extended to the aggravating circumstances issue) found aggravating circumstance(s) beyond a reasonable doubt.[2] If that finding was

_____

[2] One might argue that if the no contest plea agreement waived any right to a jury trial, the court could inquire of the defendant regarding the factual basis for the aggravating

10

made, the plea could be accepted and sentence imposed. If that finding was not made, the sentence could not be imposed, the plea agreement would be rejected, and the parties would have to start from scratch.

To borrow a phrase from an analogous case involving another recent sentencing related amendment, nothing in Senate Bill 567 "suggests an intent to overturn, sub silentio, long-standing plea-bargaining law binding courts to the agreements they approve" (*People v. Brooks* (2020) 58 Cal.App.5th 1099, 1107), or the process courts have traditionally followed to approve (or disapprove) such agreements. "[T]he process of plea negotiation 'contemplates an agreement negotiated by the People and the defendant and approved by the court.' " (*People v. Segura* (2008) 44 Cal.4th 921, 929-930.) If the court does not believe the agreed-upon disposition is fair to the public, the defendant, and the victim(s), the court can disapprove the bargain reached between the prosecution and the defendant. (*Id.* at p. 931; see also *In re Alvernaz* (1992) 2 Cal.4th 924, 941.) The court's power to disapprove a plea agreement continues up until sentencing. (*People v. Mora-Duran* (2020) 45 Cal.App.5th 589, 595-596.)

That approval process, however, does not include a trial—one of the things a plea agreement is designed to avoid. Neither the statutory language or its legislative history suggests the Legislature intended to obviate the benefits of plea bargaining to

---

circumstance(s) during the plea colloquy, and if satisfied make a finding that any such factors were shown beyond a reasonable doubt. Such an additional plea colloquy, however, does not appear to constitute a "trial" as that term is used in Senate Bill 567, nor would it include the types of things associated with a trial such as the defendant's right to call and examine witnesses.

11

the People, defendants, victims, witnesses, and busy trial courts by creating a process where any upper term stipulated sentence in a no contest plea matter such as this would require a trial and findings beyond a reasonable doubt prior to the court's acceptance of the plea agreement.

We find unpersuasive defendant's contention that *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*) requires resentencing here. In that case, the defendant entered a plea agreement that included a prior serious felony enhancement under section 667, subdivision (a). (*Stamps*, *supra*, at p. 692.) While his appeal was pending, section 1385, subdivision (a) was amended to permit trial courts to strike such enhancements. Because the defendant had a newfound opportunity to advocate for striking the prior serious felony enhancement that did not exist when the plea agreement was negotiated, *Stamps* found the defendant "should be given the opportunity to seek the court's exercise of its section 1385 discretion." (*Stamps*, *supra*, at p. 707.) It found the defendant should be given this opportunity because of the trial court's role in approving (or disapproving) the plea agreement based on factors including its fairness. (*Id*. at p. 706.) If on remand the court declined to exercise its discretion, the agreed upon sentence would stand. If the court was inclined to exercise its discretion to strike the enhancement, the People would either have to agree to modify the plea agreement or withdraw from it. (*Id*. at p. 707.)

*Stamps* permitted the defendant to revisit a stipulated plea agreement because the amendment at issue in that case gave the sentencing court authority to dismiss an enhancement that did not exist at the time of the plea agreement. Broad new authority to dismiss an enhancement in the interests of justice is distinct

12

from the changes made by Senate Bill 567, which did not grant unfettered discretion to reconsider an enhancement that could in turn affect the court's approval of the plea bargain. Senate Bill 567 simply requires aggravating factors now be shown beyond a reasonable doubt before imposition of an upper term sentence, and only insofar as the court is permitted to exercise discretion in the selection of a low, middle, or high term from within the applicable sentencing triad. Because the sentencing court had authority to impose an upper term sentence before Senate Bill 567 pursuant to agreement without special findings being made, and still has that same authority today, there has been no change in the criteria that impact the sentencing court's approval of a plea agreement that necessitates resentencing here.

## D. Assembly Bill 124 Does Not Apply to Defendant's Plea Agreement

At the revocation hearing, defense counsel argued defendant's probation in the domestic violence case should be reinstated. In support of this position, defense counsel proffered that defendant had suffered childhood trauma—namely that his nose was broken at age five by his great grandmother, after which he grew up in multiple foster care homes until he aged out of the system. Counsel also pointed out that defendant continued to struggle with mental illness. The court acknowledged these facts, noting "the terribly bad circumstances of [defendant's] youth and experiencing childhood trauma." The court, however, declined to reinstate probation and ordered suspension of the prison term lifted, stating its decision was based on a re-review of the preliminary hearing transcript in the underlying domestic violence case, that this was not defendant's first offense involving violence, defendant's almost immediate failure to comply with

13

probatory terms, and the court's lack of confidence that defendant would not use force or violence against another person if there was no consequence for his actions.

As noted above, Assembly Bill 124 amended section 1170 to add subdivision (b)(6), which creates a presumption in favor of the low term when a defendant has experienced "psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (Stats. 2021, ch. 695, § 5.1, adding § 1170, subd. (b)(6)(A).) Overcoming that presumption requires that "the court find[ ] that the aggravating circumstances outweigh [such] mitigating circumstances." (§ 1170, subd. (b)(6).) Similar to his argument concerning Senate Bill 567, defendant asserts the trial court did not make the required findings of aggravating circumstances at the time he was sentenced, and therefore he is entitled to a new sentencing hearing at which the court can engage in weighing his mitigation evidence against the aggravating circumstances.

We reject this argument for the reasons set forth above. The statutory language provides that section 1170, subdivision (b)(6) applies when a court exercises sentencing discretion. (*People v. Kelly* (2022) ___ Cal.App.5th ___ [2022 WL 17984118 at pp. *3, *4] [Assem. Bill 124 inapplicable to a defendant who pled guilty pursuant to plea agreement with a stipulated sentence because trial court had no discretion to depart from the stipulated sentence regardless of whether the defendant had experienced psychological, physical, or childhood trauma within the meaning of § 1170, subd. (b)(6)(A)].) The court here did not (and could not) exercise such discretion when sentencing because it had decided to accept the plea agreement between the parties

and be bound (like the parties) to the agreement.[3]  Indeed, the court could not exercise such discretion here given the constraints imposed by section 1192.5, subdivision (b).  Finally, as with Senate Bill 567, defendant's argument presupposes that Assembly Bill 124 was intended to restructure the no contest plea process in his case to require a pre-sentencing trial where the finder of fact determines the existence of aggravating circumstance(s) beyond a reasonable doubt before any agreed upon sentence above the low term is imposed.  Defendant presents nothing to suggest the Legislature intended Assembly Bill 124 to create such a disruptive and time-consuming change to the plea bargaining process.

---

[3] Defendant's reliance on *People v. Flores, supra,* 73 Cal.App.5th 1032 is misplaced.  In that case, the Court of Appeal held resentencing was required under Assembly Bill 124 when the defendant pleaded guilty pursuant to a plea agreement and was under the age of 26 when he committed the crime.  (See § 1170, subd. (b)(6)(B).)  The critical difference is that in *Flores,* the defendant's plea was open with no agreed determinate sentence, and therefore the court did exercise discretion when imposing sentence.  (*Flores, supra,* at pp. 1036-1037.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:



ROTHSCHILD, P. J.



CHANEY, J.